## STANDARD OIL CO. OF LOUISIANA v. SMITH.
### No. 1301.

Court of Appeal of Louisiana. First Circuit.
March 6, 1934.

Ellis & Ellis, of Amite, and T. M. Milling, F. L. Hargrove, and A. M. Curtis, all of New Orleans, for appellant.

Rownd & Warner, of Hammond, for appellee.

ELLIOTT, Judge.

Standard Oil Company of Louisiana brought suit against Frank A. Smith, as its agent in the operation of a filling and service station, claiming of him $1,436.82 as the balance due on account.

The record contains an exception of no right or cause of action, which appears to have been filed at the instance of the defendant, but the minutes of the lower court do not show authority on the part of the court for the filing nor any ruling thereon. Furthermore, the exception is not mentioned in the defendant's brief. The exception does not require any ruling on our part.

Defendant filed a motion for oyer, which the plaintiff resisted. The minutes do not show how the court ruled on the question. The matter is not mentioned in defendant's brief. There is nothing growing out of the motion, which requires action on our part.

Defendant, answering, denies that he is indebted to the plaintiff. He admits that he was appointed its agent for the purpose of selling gasoline and other motor fuels, oils, greases, and petroleum products, but only for a certain period of time, which terminated on March 31, 1932.

He brings forward against the plaintiff a demand in reconvention for $810. He alleges, in support of his demand in reconvention, that he is the sole heir of Mrs. Ella M. Smith; that S. F. Black and himself leased from Mrs. Ella M. Smith, defendant's mother, the property operated by plaintiff as a filling and service station; that he and Black sublet the property to plaintiff, defendant's mother, the owner of the property, consenting thereto; that his mother has since departed this life, leaving him her only heir; that as such he became at her death the owner of the property in question and of all of his mother's rights under the lease; that the lease from Black and himself to plaintiff empowered plaintiff to paint the leased building any color it might desire, including its trade-marks, signs, devices, and advertisements, plaintiff undertaking in the contract, at the expiration of the lease, to restore the property to the condition it was in at the date of the lease; that plaintiff did not and has not restored the premises to its condition at the date of the lease, although amicably requested to do so; that it will cost $750 to restore the property to its condition at the date of the lease, and rent to the extent of $60 will be lost during the time necessary to do the work.

He prays that plaintiff's demand against him be rejected and that he have judgment against plaintiff in reconvention for $810.

There was judgment in favor of the plaintiff for $1,436.82 with interest and judgment in favor of the defendant and against the plaintiff in reconvention for $745 with interest.

The plaintiff has appealed. Defendant filed a motion to dismiss the appeal on the ground: "That on or about June 1st, 1933 the said plaintiff-appellant executed on this said judgment by causing a writ of fieri facias to issue on the judgment from which he had appealed, which said writ of fieri facias when presented by the sheriff to defendant-appellee was fully paid and satisfied, all as fully shown by a certificate of Norman P. Vernon, Clerk of Court for the Parish of Tangipahoa, annexed hereto; that said plaintiff-appellant by executing on said judgment has acquiesced in the same and plaintiff-appellant's appeal should therefore be dismissed at his cost."

The certificate referred to reads: "I hereby certify, that the suit of Standard Oil Company of La. vs F. A. Smith, No. 5227 on the docket of the 21st Judicial District Court of Louisiana, has been fully satisfied on the docket of said court." This certificate bears date December 5, 1933.

The language of the motion and the briefs of the parties show that the motion is based on an alleged acquiescence on the part of plaintiff in the judgment in reconvention. The plaintiff executed its judgment to the extent that it was not offset by the judgment in reconvention, upon which defendant paid the amount called for by the writ and takes the position that the execution amounts to an acquiescence in the judgment appealed from within the meaning of the Code of Practice, art. 567. But in view of the decision, Foster & Glassell Co. v. Harrison, 173 La. 551, 138 So. 99, the motion is overruled.

■ Defendant contends that the lower court erred in receiving evidence in support of sales made by plaintiff to defendant after the expiration of the agency under which the defendant was working for the plaintiff. Defendant contends that he was in partnership with Black, and that, after the expiration of the agency contract between plaintiff and himself, gasoline, etc., was received and sold by the firm composed of himself and Black.

The evidence shows that, after the expiration of the agency agreement between the plaintiff and the defendant, the plaintiff for a short time continued to deliver gasoline, etc., to the defendant. It was consigned to him on the same terms stipulated in the contract of agency, but it was sold by the firm of Smith & Black. In view of the consignment to the defendant, we think under the law, Civil Code, arts. 1816 and 1817, defendant owes the price. The ruling of the court was in our opinion correct.

The preponderance of the evidence on the subject of defendant's indebtedness to the plaintiff supports the judgment of the court in favor of the plaintiff for $1,436.82. There is mention in the judgment of an intervention. We think this an inadvertence, and that reconvention was the word which the judge had in mind.

■ Plaintiff contends that the defendant, Smith, has no right to urge the demand in reconvention contained in his answer and to stand in judgment on the subject. There seems to be no question about the fact that Mrs. Ella M. Smith was the owner and possessor of the land and buildings, described in the petition, part of which was the premises in question. Plaintiff's lease commenced April 1, 1930. At the expiration of the first period it was renewed, but the lease terminated on March 31, 1932. Mrs. Ella M. Smith, defendant's mother, departed this life February 7, 1932, which was previous to its termination, leaving defendant her sole heir and as such

the owner of the property and of her rights under the original lease as well as under the sublease. The rights and obligations of the sublease were shared between defendant and S. F. Black.

Defendant alleges that a copy of the will left by his mother and of its probate and the record of her succession, showing his right as her heir, is annexed to and made part of his answer. The record is not annexed to his answer and was not offered in evidence, but the facts on the subject were testified to by the defendant on the trial without objection, so we take it that we may safely assume the fact of defendant's ownership by inheritance from his mother for the purposes of the present appeal. So, according to the showing made, defendant is owner of the building and has the right, as such, to set up the demand in reconvention, which his answer contains and to stand in judgment as to same.

■ The lease under which defendant obtained the filling and service station contains, with other matters not necessary to mention, a stipulation which reads as follows: "Lessee is hereby given the further right to paint said buildings, structures, tanks and equipment in any colors it shall select and to paint thereon such of the trade-marks and other signs, devices and advertisements as it shall elect. Upon the expiration or termination of this lease for any cause, lessee is to return the property herein described to lessor and lessee shall restore said premises to the condition exsiting on the date hereof, ordinary wear and tear excepted."

The evidence shows that the building in question was constructed of brick, cement, and stucco, and that plaintiff, soon after taking possession, painted on the building, principally in front, what is known as the Standard Oil Company's colors. Just what the colors are does not appear, but we assume that they consisted of plaintiff's name, trade-mark, advertising signs, and devices as stipulated in the contract. It seems that plaintiff's colors are red and white. Defendant protested and objected at the time it was being done, but without avail.

It also appears that Albert Tolle, the contractor, who had erected the building, happened to pass while it was being painted and declared to the painters that they were going to spoil the building, and made a like statement to defendant.

It appears that Shell Petroleum Company, Gulf Refining Company, and other companies dealing in petroleum products each have

their own individual colors, advertising signs, and devices concerning the products which they sell and with which they paint the buildings in which they do business. The paint does not harm the physical structure. It preserves it. But after absorption into the brick, cement, and stucco, it is ineffaceable, except to a limited extent.

Plaintiff had the right under its lease to paint the building as it saw proper. It contends that the contract does not obligate it to remove or cover up the paint in such a way as to restore the building to approximately the color it had at the date of the lease. It contends that the restoration stipulated in the lease has reference to the form and physical structure and not to the appearance of the building as the result of having been painted with its colors, etc.

The evidence shows that the building in question was constructed for use as a filling and service station for the sale of petroleum products, etc. It seems to be a proper inference that the building is valuable for use as a filling and service station and is not adapted to nor likely to be rentable for any other kind of business. Plaintiff does not occupy the premises any more; yet the building carries on its front and perhaps on its side or sides the colors of the Standard Oil Company, indicating that its products are on sale at that place. It is therefore reasonable to conclude that no other company dealing in petroleum products will, as long as the building carries plaintiff's colors, look on it with favor as a place for the sale of its own competitive products.

We therefore understand that for defendant it is important to have the painting effaced, and it is our conclusion that the stipulation heretofore quoted from the contract of lease obligates the plaintiff to the restoration claimed by the defendant. There cannot be, as we understand, a perfect restoration, but there can be a removal and painting over, so that the building, if rented to another dealer in petroleum products, can be made to properly advertise the premises as a place in which its products are for sale. Otherwise the value of the building as a filling and service station will, as a result of the use to which plaintiff has subjected it, be greatly impaired, contrary to the contemplation of the contract. Such being plaintiff's obligation, it must either restore the building at its own expense, in the way stated, else pay such a sum that defendant can have it done.

This interpretation and enforcement of the lease is supported by the fact that, after the termination of the lease, plaintiff sent William Estoups, an expert painter, to the place to ascertain whether or not the paint, which it had placed on the building, could be removed. We quote from Smith, witness for himself, direct examination:

"Q. Do you know whether or not the Standard Oil Company have ever attempted to remove this paint? A. One of their employees did.

"Q. Who was that? A. Mr. Bill Estoups.

"Q. Was he successful in removing that paint? A. Not all of it, no sir."

Cross-examination:

"Q. You just stated, that one of our representatives attempted to remove the paint. A. He came up there and did it.

"Q. Did he try to remove all the paint or make a test? A. Make a test.

"Q. It was a matter of test? A. Yes sir.

"Q. I don't want the court to believe he attempted to remove the paint. A. He came up there and told me he came up there and represented the Standard Oil Company and wanted to see what he could do with it.

"Q. What did he do make a test? A. He tried it."

After defendant had testified as stated, Mr. Estoups was called as witness by the plaintiff. He admitted going to the place for the purpose stated and did not deny the statement imputed to him by Smith; that he came there as the representative of the Standard Oil Company to see what he could do with it, evidently meaning what he could do toward removing the paint that plaintiff had placed on the building. If what Smith said was untrue, he could and would have contradicted it.

The testimony therefore indicates that plaintiff felt some concern at the termination of the lease as to its duty in the matter of the restoration of the building to its former color. Estoups testified that he made a test for the purpose stated about 2½ or 3 months before the trial; that his test was not a complete success, but he claimed that since then he had discovered a process whereby the paint could be removed, the surface repainted, and the building placed approximately in the same condition, in the matter of color, as it was at the date of the lease. In one part of his testimony he says that the work can be done for $75, but in another he estimated that it will cost $150.

■ Plaintiff, in case it is held that it was its duty under the lease to restore, at its termination, the color of the building, re-

quests that we reduce the amount allowed on said account in the lower court to $150. We are inclined to believe that the paint can be removed to such an extent that the surface, when painted over the former color, will be so nearly restored that any other company dealing in petroleum products can make the building satisfactorily advertise its products by painting its name, signs, colors, and advertising devices on the building as was done by the plaintiff. Mr. Estoups and Mr. Brackney both say it can be done, but we are not satisfied to fix the amount, which plaintiff should pay on that account, at the sum stated by Estoups. The process which he claims to have discovered, since makirlg his test, has not been proved on the building. It may be a success and may not be. It is too uncertain to be accepted as a fact. Plaintiff was amicably requested to remove the paint upon the termination of the lease, but, save sending Estoups to make a test, which after making he left without trying to restore the color of the building, it has done nothing, evidently intending to leave the situation with the defendant to handle as best he can. Mr. Estoups, if called on to do the work at the price which he named, might not be willing to do the work at any price.

Mr. L. E. Brackney, an expert painter, apparently disinterested, was of the opinion that the paint can be removed and the surface painted over in such a way as to restore the former color substantially as contemplated by the contract. He was asked by the court: "You don't know but in your opinion could that paint be removed from the building and restored to anything near the original condition?" His answer was that it could be, but his examination on the subject showed that he was not sure about it and he would not fix any price at which it could be done.

On the other hand, Messrs. Tolle and Drott, building contractors, each familiar with paint work, testified that the paint put on the building by the plaintiff could not be removed nor painted over in such a way as to restore the building to its former color. They gave it as their opinion that it will be necessary in order to accomplish the restoration to cut out and replace the brick, cement, and stucco to the depth of about one and one-half inches and replace same with new material. They estimate that it will take nearly a month to do the work and fix the total cost at $745. Judging from the amount allowed, the trial judge accepted their testimony as to what it will be necessary to do and the cost

thereof. Their method is the only certain way advanced, and, if their method is pursued, then their estimate as to the cost is the only one based on the way they say the work should be done in order to accomplish the restoration. The method of doing the work and the cost thereof is a matter about which much difference of opinion may exist. The subject has received our consideration. We are not satisfied that the court erred.

Judgment affirmed; plaintiff-appellant to pay the cost in both courts.